We have a final case this morning is number 15-1046, JS Products, Inc. v. Kabo Tool Company. This case presents a relatively straightforward question of how much difference does difference mean? Well, it seems to me what you're trying to do is to have one claim construction for infringement and another claim construction for anticipation. And doing that by saying that the claim language has a plain meaning which can be determined by the jury. Because is it not the case that the same things that you're accusing of infringement existed in the prior art? No, Your Honor. In fact, it's actually JFP that's arguing for differing constructions of the word different depending on the context whether infringement or invalidity is accused here. Let's slow down there for a second. In your Markman briefing, when it came down to the word different, I believe at A1013, you promoted the idea that plain meaning. The jury will let the jury decide what the word different means based on ordinary understandings of the word different. But now today you want, for invalidity purposes obviously, you're telling us that different has to be understood with respect to one of ordinary skill in the art. And that it had some kind of technical understanding in the wrench art that it would take into account that I guess what you would call non-negligible differences based on manufacturing imperfections would not count for different. Do you understand why from my vantage point it sounds like your conception of the word different changed from Markman to today? I understand your question, Your Honor. I don't agree with the premise that it changed over time. Okay. Which part am I wrong about? Am I wrong that at A1013 you wanted the district judge to understand the word different to not need any construction and let the jury decide based on plain ordinary meaning without any context to how one of ordinary skill in the art and the wrench art would understand this? Yes, Your Honor. That is actually incorrect. That is incorrect, Your Honor. And the reason why it's incorrect is because our paper actually said as a jury and a person of ordinary skill in the art would understand the term. At the Markman hearing, and this can be found at multiple locations, I argued, and this is at A1355. I'm just looking at A1013. This is a straightforward word and so commonly understood in the English language that it reveals how unnecessary it is for the court to construe. So no construction is necessary for this term. That's correct, Your Honor. In fact, both of the experts agreed on the construction. So, I mean, there's no suggestion in here about anything with respect to the context of how one of ordinary skill in the art and the manufacturing of wrenches would understand it. It's all about plain meaning. It is plain meaning as one of ordinary skill in the art would understand it, and that's precisely what I argued at the Markman hearing. If you go to A1355, A1384 through 1385, and A1392 through 1393, the claim at the Markman – the argument at the Markman hearing was that a person of ordinary skill in the art would understand this term in the context of manufacturing tolerances. Did you present any evidence of that? I did, Your Honor. What does that mean, the individual tolerances of the individual manufacturer? No, there's standard – I mean, these are hand tools. Hand tools have standards that are related to manufacturing tolerances. For example, if you take a wrench, the opening of the wrench, and this was cited by – But the same manufacturing tolerances for everybody. Manufacturing tolerances differ by product. So, for example, if you have a – Yeah, but it doesn't differ for manufacturers. Generally, manufacturing tolerances are the same. But generally – I mean, but what's your argument? Is it a general standard applicable to all manufacturers, or does it depend on the tolerances specified by the particular manufacturer? It's actually specified generally by customers, not by manufacturers. So, a customer for a particular – Is it customer specific, then? No, not generally for hand tools. Well, you keep using the word generally. That's right. What I'm trying to understand is are you saying that the manufacturing tolerance is a general standard applicable to all products of the same type? And with that regard, to which customer it is or which manufacturer it is? In the context of hand tools – No, wait, wait. Answer my question. And, Your Honor, I'm trying to answer it in the context of hand tools. The answer would be yes, that there would be an understanding of tolerance, depending on what tolerance you're talking about. If we're talking about tilt angle differences, which is an issue here, then yes, there would be an understanding by a person of ordinary skill in the art. Okay, so what evidence did you present as to what the tolerances are? Your Honor, I presented a number of different – of particular evidence. The first is we showed the opinions of both of the experts in this case, both Mr. Buckley and Mr. Olson, established that a person of ordinary skill in the art, someone that had a – Are we back to the Markman hearing, or are we sometime later? This is the Markman hearing. Okay. Now, prior to the Markman hearing, you didn't present any evidence to the argument that you're about to make. You were relying on the declarations of other experts. You did not present any evidence, and if you did, where in the record is it? Your Honor, we did – Prior to the Markman hearing. Yeah, prior to the Markman hearing, we did provide intrinsic evidence. Let's find out what the evidence is first, and then we'll find out when you presented it. What is the evidence that you presented as to what the tolerances are? Sure. Your Honor, we weren't arguing about specific tolerances because the patents are broader. They cover different tolerances. If you have a wrench of one size, one that's a half-inch wrench versus a wrench of – Did you present any evidence as to what the tolerances were? We presented that evidence at the claim construction hearing, Your Honor. What was the evidence about what the tolerances were? Your Honor, the evidence was that it was, at least from our expert testimony, that it varied by above one one-hundredth of a millimeter for jaw thickness, and it was zero degrees difference for tilt angle. That was testimony by our expert. Any difference? His testimony was that any difference? No. Would come within – No. In fact, he actually found that certain products were not infringing because they were below a thousandth of a degree in tilt angle. He's not saying that – the issue here is that there's – So is the standard a thousandth of a – I thought the tilt angle was zero. That's what is specified, but one of ordinary skill in the art when measuring tilt angle difference would go to the thousandth of a degree. That's the testimony by Mr. Buckley. There was plenty of evidence that in the prior art there were tilt angles that differed by more than a thousandth of a degree, right? Bohr and Schleyer, they didn't have absolute perfection. Everybody agrees with that. You're correct, Your Honor, that there is no – if you look at a subatomic level, there may or may not be – we don't know. One one-thousandth of a degree is getting pretty close to atomic level. I mean, we're talking micron level in terms of difference in thickness between one jaw and another. I'm pretty sure I can't see a micron. And, Your Honor, I respectfully disagree. One thousandth of a degree is not a micron degree. It's something that can be viewed with the naked eye. What was it, like one one-hundredth of a millimeter? I guess maybe that's ten microns. That's right. It is something that can be viewed without a microscope. I can see ten microns? According to one one-hundredth of a millimeter, our experts didn't even use a microscope. They used imaging that they measured with the laser imaging. And so it wasn't that you have to look at microscopes. In fact, when they showed him a wrench, Mr. Buckley, at deposition, he was able to identify it just by sight, which wrenches varied in degree differences. To go back to your question about Schleyer. There are plenty of prior art wrenches in the record here that vary much, much more than that on the tilt angle. Your Honor, only two wrenches are at issue on the appeal. These are the two patents. That's all that this court is deciding. Those two patents do not specify tilt angle differences, both recognized by the examiner and by the investigator. I don't think you're answering my question. Your Honor, there was testimony by the experts about prior art wrenches that had tilt angles that varied by more than a thousandth of a degree. Right? Your Honor, JSP presented some evidence that we contest. You didn't present any evidence to the contrary. You didn't measure any prior art wrenches, did you, to show that they didn't vary by more than a thousandth of a degree? Right, Your Honor. We challenged their testing methodology and also showed that it wasn't due to a manufacturing issue, that it could have been due to wear and tear. We don't know the chain of custody of these wrenches that they identified. These wrenches, some of them that they showed were 60 years old. They showed significant scratches and use and tearing, and some of it could have been bent. They don't know where these wrenches even came from. A lot of them had been sitting around in some person's garage, had been used for decades on car repair. And so we don't know whether that was accidentally created, and that's where the issue here is anticipation, not some accident. Do you seriously contend that prior art wrenches always varied their tilt angle by less than a thousandth of a degree? Your Honor, their own testimony found that a wrench from 80 years ago had a zero degree tilt angle. You don't like to answer the question. Answer my question, not the question you want to answer. Do you seriously contend that prior art wrenches were all within the tolerance of a thousandth of a degree? I do not contend that all wrenches were within a thousandth of a degree that they have identified. I'm saying that they have not shown any wrenches in this case, and there's only two patents at issue on appeal here, that varied by more than a thousandth of a degree. They haven't. The patents that they showed were within manufacturing tolerances. That's their testimony. That's our testimony. Anything that's below manufacturing tolerances wouldn't infringe, also wouldn't be valid, wouldn't be an invalidated reference. So it's your infringement theory that any wrench that has a variance in tilt angle between the two jaws of more than one one-thousandth of a degree infringes? It meets that limitation of the claim. It has to meet the other limitation of the claim. Right. Yes. Assuming… What is the purpose of changing the difference in tilt angle between the two jaws? There are two purposes that were testified in the record. The first is… What benefit would you get if the variance in the tilt angle was, say, two one-thousandth of a degree? Right, and our expert testified that the benefit would be increased comfort and also increased torque power. So you'd be able to, on an uneven surface… Two one-thousandth of a degree? That's what's going to get you those bennies? Along with smaller jaw head thickness and the combination with the tilt head differences, the tilting of the tilted angles of both of the heads, yes, you would get benefits. And that's testimony from our expert. Where is that? Now, there's a dispute. There's a factual dispute. Well, our expert's testimony that would be found in the rebuttal report found at 1605… I'm sorry. Excuse me. I quoted the wrong one. It would be Mr. Buckley's rebuttal report, and I was just incorrectly citing it to Mr. Olson's rebuttal report, to be at… Your Honor, I apologize. I have to find it, but I will find it. It's in the rebuttal report where he identifies the benefits of the tilt angle differences. Also, we presented some inventor data from a notebook from our inventor that indicated that these degrees and differences showing some mathematical formulas. And admittedly, Your Honor, it does show a degree of difference. It doesn't go down to your hypothetical, which is .21,000th of a degree, but does show mathematically if you plugged in 21,000th of a degree, you would show the torque difference using a mathematical formula that's contained in the inventor's notebook. Now, the example in the inventor's notebook is one degree, and I concede that that's a substantial difference from .21,000th of a degree, but still there would be benefit in torque and comfort level given the entire design and entirety of the wrench. Okay, Mr. Davis. You're in the rebuttal time. Do you want to save the rest of it here? I'll save the rest for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The district court's decision on invalidity based on anticipation should be affirmed because the record was undisputed factually that the accused products were practicing the prior art. They were using the well-known hand polishing technique that introduced variations in the angle and thicknesses of the jaws that all witnesses, experts, fact witnesses alike, agreed would result in variations exactly of the type that were found in the accused products. Where does their witness say that the prior art wrenches varied according to more than 1,000th of a degree? I know there was some testing by your expert. What did their expert say about this that supports you? Well, their expert – I don't know that anything he said supports him on this point, Your Honor. What their expert said was that all wrenches would be using this hand polishing technique and that naturally that would result in several thousandths of an inch in variations in the jaws. What I'm asking is where. Where do I find that? Where would you find that, Your Honor? You would find that in Mr. Buckley's testimony that we submitted to the court. And if you'd like a record cite to that, I will – Buckley is their expert? Mr. Buckley was the patent owner's expert. Okay. And that was submitted – it was identified in the Statement of Uncontroverted Facts along with the fact witness testimony that we presented to the court that the natural result of – Okay, but I just want to see where Mr. Buckley said that. Where do I find that? I will – I could – in a moment, Your Honor, let me see if I could identify the actual portion of the transcript here that we have of the record on that where he testified that all of the wrenches would result in having these inherent differences. We cited in our brief, Your Honor, at 1700 in the appendix that all wrenches would have differences in tilt angle if measured precisely enough. And likewise at 1704 and 1705, he gave some specifics about how many thousandths of an inch of material would be removed from the head of the wrench. And I'm pointing to the cites at page 55 of our brief. Didn't the addition of the word different render the pen allowable over the prior art? Well, there were a number of changes to the scope of the claim, Your Honor. Initially, as claimed, the claims were directed to – That was significant, wasn't it, in order to get over the prior art? Yes, Your Honor. I mean, it was that amendment by removing the reference to common planes and adding in this language that we're construing. So within the industry, there's no wrenches that ever measure the same because you can drop one, put one in your pocket, hand polish another. You always have these differences. Wouldn't a posse to understand differences or different to be something other than just manufacturing tolerances? Your Honor, that's where the person of skill in the art would start in their analysis in reviewing the patent. And what the problem arises immediately is that because the disclosure in the patent is so thin, we have a column and a half of disclosure, not a single dimension, not a single reference to a manufacturing tolerance. And in fact, there is no standard manufacturing tolerance associated with the variations resulting from the hand polishing. I would think they'd be pretty happy with their claim construction because they've come here today and said that anything that varies by more than a thousandth of an inch infringes. So if it's something that varies by more than a thousandth of an inch infringes, that also must be the test for invalidity. And if the prior art varied by more than a thousandth of an inch, there's anticipation. Why aren't you happy with their claim construction? I agree, Your Honor. And one of the points I wanted to make today was that their dispute about the claim construction really won't change the outcome here because their own expert relied on a zero degree tolerance in the difference in tilt angle as his foundation for his infringement opinion. Even if manufacturing tolerances were somehow taken into account in the claim construction, and we've yet to hear a really firm articulation of how that should be done because at the district court, the argument was any lay person would understand the meaning of different. And we've never actually heard exactly where the court erred, what the court should have done differently. They're saying the court erred by construing the claim and that the court should not have construed the claim at all. But all that aside, correct, Your Honor, if there is a modification to the claim construction, as the patent owner must read the claim to find infringement, that same standard, when applied on the anticipation side, will result in anticipation as a matter of law because it, again, is undisputed. That the accused products have the same variations resulting from the same hand polishing process as was inherent in all of the prior art. How could that be if, in order to overcome the prior art, they already had to add the word different, and that was allowed? So there's already, we have that determination that different, as used in the claim, overcomes the prior art. Well, Your Honor, they were not just adding the limitation different to overcome the prior art. They removed another limitation about a reference to a common claim. And they really changed the nature of the feature that they were trying to claim rather than just simply narrow an existing claim feature. But then wasn't it different that what the examiner relied on? Wasn't it in the notice of allowance some statement by the examiner along the lines of, you know, this notion of differing, changing the slope of the two jaws? That's not something that's taught or suggested in the prior art. Two points, Your Honor. Is that the key moment? Well, Your Honor, in what the examiner, there was an examiner's amendment that resulted in this additional language. What the examiner was trying to help the applicant do, I believe, from the file history, was to focus the claim on the idea that each jaw is at a different angle from the other jaw. And that was something that wasn't very apparent, wasn't very clear from the claims as originally written referring to a common claim. But at no point in the file history is there any indication that there is this standard hand polishing manufacturing technique that's been widely used for decades that results in these thousandths of an inch variations. And no indication in the file history that the patent applicant is now going to take that claim as allowed and read it so broadly as to cover accused products where they are. I would describe one potential problem with your position. If I were to read the prosecution history for this patent, I would feel like I could go buy a wrench from Mr. Foer or Mr. Schlaer and I would be fine. But it turns out that no, as a technical matter, based on this claim construction, that wrench that I purchased would be infringing these claims. And it seems like one could argue that whatever Foer and Schlaer disclose and whatever wrench they sell based on that disclosure has been disclaimed from the scope of the claim. Well, Your Honor, that's fundamentally… Therefore, that somehow informs the validity analysis here in that whatever these claims are, they can't necessarily be invalidated by these prior art references. What I would say is that if we look at this court's Smith-Klein decision, the court dealt with a very similar issue of as a policy matter, shouldn't we try to construe the claim in a way so that we do not ensnare the prior art? And that's the way the district court in the Smith-Klein case… Well, this is an argument for saying, based on the prosecution history, that different must mean differences that exceed what exists in the prior art, which suggests that their claim construction, that is the 1,000th of a degree, is not the correct claim construction. That the claim construction would have to be things that would eliminate the prior art and I assume would eliminate infringement of your client's product as well. That's correct, Your Honor, because in the summary judgment context, I think the district court properly drew the infringement inference in favor of the patent owner and applying the claims as broadly as the plaintiff did in order to find infringement by the accused wrenches, which were essentially the Schiller and Foer wrenches. The court came to the conclusion that there was this anticipation and I think that's the same pattern that happened in that Smith-Klein case where this court said the claim construction, if you claimed it broadly, you have to live with that broad claim and the result is an inherent anticipation. I guess the problem that I see for the other side is that it's not clear from the prosecution history that anybody, either the examiner or the applicant, had in mind the possibility that there would be some naturally occurring differences in the wrench thicknesses in the prior art and then that issue didn't really come up in time during the Markman process. Although the opposing counsel says that they brought up the notion of manufacturing tolerances and how one ordinary skill in the arts in reading these kinds of claims and understanding this industry would know that you're going to have a little bit of play in the joints in terms of relative sameness or the difference would be a non-negligible difference. Your Honor's raised two points. Let me, if I could take them in order. First, as to the prosecution history, yes, the prior art and the patent are not directed to the manufacturing process and I don't see how the examiner could have been contemplating that differences in angle and thickness, which are on the order of the lines of ink on the drawings in the patent. It's not smaller. Your Honor's correct. We're talking about 10 microns and thousands of degrees. So, I don't think the file history really informed the issue. The examiner really made this conscious decision about the issue with respect to manufacturing tolerances. In the claim construction process below, the patent owner was consistent in saying, don't rely on extrinsic evidence. We went through the patent local process and in two rounds of briefing and in a joint claim construction statement, they rely solely on intrinsic evidence and they say any lay person would be able to appreciate this meaning of difference. When we get to the Markman hearing, at no point is there an effort to make of record the expert testimony. The expert declaration, the expert reports were in connection with infringement and invalidity. They were not submitted to the district court for… Were the arguments we're hearing today made during the claim construction hearing? Mr. Davis did mention at the transcript this issue of he thought that the experts said that tolerance should be taken into account. He said that my expert said that he did not submit my expert's report to the district court. The argument that I was making was along the lines of Judge Sykes' comment. We want the same construction for both infringement and validity and we are very concerned that what the plaintiff, the patent owner rather, was trying to do was to leave the patent term different, very, very wide open and allow them to use the classic nose of wax situation and argue one way for infringement and then in front of the jury to then argue that, in fact, different meant something else. And therefore, they were able to distinguish the prior art. And that was exactly the issue that got framed at the… So your point is when it came to make ruling and issuing a Markman order, there wasn't any extrinsic evidence in front of the judge at the time to understand and evaluate to what degree should he understand the term different with respect to manufacturing tolerance? There was never a submission. Correct, Your Honor. the claim construction process. We asked for not identical from the very outset and the patent owner asked for no construction from the very outset. And so, given those choices, we think the district court made the correct choice. And again, we don't think that ultimately the expert opinions would have made a difference. The reason being that when the experts looked for the tolerance that would have governed, they both came away concluding that the patent was silent on the tolerances and that there were no standards applying to the hand polishing process. This was not something that was based on a particular industry standard. I just want to point to the record. There was testimony by two different witnesses to that point that there is no general industry standard on this hand polishing process because that, I think, really ultimately resolved the issue. Mr. Olson, our expert at A1668, said it's just a visual inspection. After you hand polish it, you just take a look at it visually. There's no specific number of microns that you're measuring. Likewise, Mr. Moore, our vice president of engineering at 1686-87, said the same thing. Said this is basically, it's literally an operator holding the wrench, pressing it up against a spinning abrasive device, and there are naturally differences depending on which operator is doing it, how much pressure they apply. Again, no formal standard tolerance that applies to that. I think we're about out of time. Thank you, Your Honor. Thank you, Mr. Dunn. Mr. Davis. Your Honor, the problem with not identicals, it means differences below a manufacturing tolerance to the subatomic level. We have claimed consistently that... So, what's your contention is that it should be a thousandth of an inch? No, it's within the manufacturing tolerance. Of a degree? And it's not a thousandth of an inch. I misspoke. A thousandth of a degree. Yeah, a degree. And degrees are not measured in inches or millimeters. You said that every wrench infringes if it varies by more than a thousandth of a degree. So, that has to be the claim construction, right? No, the claim construction, because it could vary between wrenches for different purposes. So, if you have a wrench that's used for medical issues versus one that's used on race cars, those wrenches have different standards, Your Honor. I mean, that's the reason why the claim didn't limit and didn't say manufacturing tolerance to one one-thousandth of a degree. This court's long said you don't have to have mathematical precision in defining these terms. And to Judge Chen's point where he says, well, naturally occurring differences were not contemplated, that's not true if you look at the intrinsic record. The fore reference, which they assert as inherently infringing, uses the term approximately, approximately 45 degrees. That term approximately, near or at, means less than that manufacturing tolerance. That reference was considered by the examiner and rejected that particular reference as not being differing tilt angles because it was within or below manufacturing tolerances. Their construction reduces this to absurdity. I think we're out of time. Okay. Thank you. Thank both counsels. Case is submitted.